

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 16, 2008

**BY HAND**

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/18/08

The Honorable Victor Marrero
United States District Judge
Southern District of New York
500 Pearl Street
Suite 660
New York, New York 10007

Re:    ***United States of America* v. *Arsenio Rodriguez & Manuel Melo,***
       **07 Cr. 1150 (VM)**

Dear Judge Marrero,

          The Government respectfully submits this letter in response to defendant Arsenio
Rodriguez's April 21, 2008 motion to suppress physical evidence recovered from his automobile
by the New York City Police Department ("NYPD") in connection with Rodriguez's April 28,
2004 arrest, as well as a subsequent positive identification of Rodriguez by a victim and
Rodriguez's post-arrest statement (the "Suppression Motion").  According to Rodriguez: (1) the
police lacked probable cause to arrest him and search his minivan; (2) the post-arrest "show up"
identification was unduly suggestive; and (3) his statement to the police should be suppressed as
fruit of the poisonous tree.  Because Rodriguez has failed to put forth specific facts sufficient to
contest these issues, the Court should deny the defendant's motion to suppress without an
evidentiary hearing.

**BACKGROUND**

          Rodriguez is charged in a three-count Indictment with: (1) conspiring to commit
Hobbs Act robberies, in violation of Title 18, United States Code, Section 1951; (2) committing
a Hobbs Act robbery on April 28, 2004, in violation of Title 18, United States Code, Sections
1951 and 2; and (3) brandishing a firearm in connection with the April 28, 2004 Hobbs Act
robbery, in violation of Title 18, United States Code, Section 924(c).  (A copy of the Indictment

Hon. Victor Marrero
May 16, 2008
Page 2 of 10

is attached as Exhibit A.)  The background of this case is set forth in a Complaint filed on
October 5, 2004.  (A copy of the Complaint is attached as Exhibit B.)[1]

According to the Complaint, on or about April 28, 2004, at approximately 9:55
a.m., an individual (the "Victim") exited his residence in Queens, New York and entered his
vehicle, a black Infiniti Q45.  (Compl. ¶ 2(c)).  The Victim double parked his car in front of his
apartment and got out.  (*Id.*)  At that time, an unidentified male ("UM") and a co-conspirator
("CC-1") approached the Victim.  (*Id.*)  The UM was brandishing a firearm.  (*Id.*)

While the UM trained the firearm on the Victim, CC-1 entered the Victim's car
and removed two suitcases.  (*Id.* ¶ 2(d)).  The suitcases contained, among other things, a number
of telephone calling cards that the Victim had recently purchased from Union Telecards Alliance
in Bronx, New York.  (*Id.* ¶ 2(b),(d)).  The Victim operated a telephone calling card business, in
which he bought telephone calling cards from distributors and resold them to smaller stores.  (*Id.*
¶ 2(a)).

The UM and CC-1 then entered a green Toyota minivan and the Victim observed
a third male ("CC-2") waiting inside.  (*Id.* ¶ 2(e)).  The robbers then fled.  (*Id.*)  The Victim got
back into his own car and pursued them, while at the same time calling the police.  (*Id.* ¶ 2(f)).
The Victim described the robbery and the green Toyota minivan, and also gave a partial
identification of the green Toyota minivan's license plate.  (*Id.*)  However, the Victim was
ultimately unable to continue his pursuit of the UM and his co-conspirators.  (*Id.*)

A police officer on patrol in that area (the "Officer") received a description of the
robbery and the information about the green Toyota minivan from the police radio dispatcher.
(*Id.* ¶ 3(a)).  The Officer then observed a green Toyota minivan which fit the description he had
heard on the radio.  (*Id.*)  The green Toyota minivan was being driven by Rodriguez.  (*Id.*)
Accordingly, the Officer stopped the vehicle in the vicinity of 87th Street and Roosevelt Avenue
in Queens, New York.  (*Id.* ¶ 3(c)).

As the Officer approached the green Toyota minivan, he saw a firearm in plain
view in the vehicle.  (*Id.*)  Accordingly, he asked Rodriguez to exit the vehicle and then placed
him under arrest.  (*Id.*)

Law enforcement then searched the green Toyota minivan and recovered:
(1) a second firearm; (2) black gloves; (3) duct tape; and (4) flex-cuffs.[2]  (*Id.* ¶ 3(d)).  The Officer
then informed other members of law enforcement that he had stopped the green Toyota minivan
involved in the robbery.  (*Id.* ¶ 3(e)).  Other NYPD officers then brought the Victim to the

---

[1]    The Complaint did not include a substantive Hobbs Act robbery count and was
dismissed without prejudice on February 18, 2005.

[2]    Flex-cuffs are plastic or nylon strips that may be fashioned as a restraint around a
person's wrists or ankles.

vicinity of 87th Street and Roosevelt Avenue. (*Id.*) The Victim identified Rodriguez as one of the participants in the robbery, which had occurred approximately 30 minutes earlier. (*Id.*)

According to an April 28, 2004 filing in the Queens County Criminal Court, Rodriguez made an oral statement to a police sergeant at approximately 3:27 p.m. at the 155th Precinct station.[3]

## DISCUSSION

Rodriguez has failed to adduce specific, detailed facts that place in question material issues relevant to the Suppression Motion. Accordingly, he is not entitled to a hearing on any of the issues he raises in his papers. In addition, even assuming, *arguendo*, that Rodriguez's version of the facts were true, he still would not be entitled to suppression of the evidence against him because probable cause supported his arrest and the search of his vehicle, the identification was not impermissibly suggestive, and the defendant's statement was not fruit of an illegal arrest. For all these reasons, the Suppression Motion should be denied without a hearing.

## A.    Rodriguez Is Not Entitled to a Hearing

1.    Applicable law

A defendant moving to suppress evidence is not automatically entitled to an evidentiary hearing unless he supports his motion with "moving papers [that] are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact . . . are in question." *United States* v. *Pena*, 961 F.2d 333, 339 (2d Cir. 1992) (internal quotation marks and citation omitted). The required showing must be made by submission of an affidavit of someone alleging personal knowledge of facts which, if credited, would establish a basis for suppression. *United States* v. *Ahmad*, 992 F. Supp. 682, 685 (S.D.N.Y. 1998) ("A party seeking to raise a factual issue to be determined at a hearing must submit admissible evidence which, if credited, would make out a *prima facie* case on the issue. This in turn requires that the issue ordinarily be raised by an affidavit of a person with personal knowledge of the facts."). "[W]hen the allegations contained in such an affidavit are general and conclusory, an evidentiary hearing is unnecessary." *United States* v. *Dewar*, 489 F. Supp. 2d 351, 359 (S.D.N.Y. 2007).

2.    Analysis

In this case, Rodriguez has failed to submit an affidavit setting forth specific material facts which, if proven, would require the suppression of the physical evidence obtained from the vehicle, the "show up" identification, and the defendant's post-arrest statement.

---

[3]    The filing also states that the Victim's identification of the defendant occurred at approximately 10:25 a.m. on April 28, 2004.

First, as to Rodriguez's arrest, he admits that he was driving his vehicle on April 28, 2004. He stopped, and then exited the vehicle "to have a conversation with the police officer." (Affidavit of Arsenio Rodriguez, sworn to on April 21, 2008 ("Rodriguez Aff." or "Rodriguez Affidavit") ¶¶ 3, 7, 8). These alleged facts are consistent with what the Officer observed, although the Officer indicated that he was also trying to pull the defendant over. (Compl. ¶ 3(c)).[4] While Rodriguez states that he was arrested before the Officer "went to my car and apparently found the weapons," (Rodriguez Aff. ¶¶ 9, 10), he does not state that the Officer could not have seen one of the firearms admittedly in the minivan in plain view before placing him under arrest. Furthermore, Rodriguez's claim to have been doing nothing wrong before he was kidnaped by robbers simply does not bear on the Officer's probable cause to stop and arrest the defendant based on the Officer's knowledge of the robbery, the partial license plate match, the description of Rodriguez's vehicle by the Victim, and the firearm in plain view. Similarly, the Rodriguez Affidavit provides no facts whatsoever that undermine the facts supporting the probable cause the Officer had to search Rodriguez's vehicle.

As to the identification after the defendant's arrest, the Rodriguez Affidavit merely states facts not in issue. The Victim was shown Rodriguez, who was in custody and handcuffs at the time. While an identification on these facts is potentially suggestive – as all "show up" identifications can be – it was not unduly suggestive for the reasons set forth in Section D, *infra*. As with Rodriguez's arrest, there is no material factual issue in dispute with the respect to the "show up" identification that requires a hearing.[5]

Finally, the Rodriguez Affidavit provides no facts counseling suppression of the defendant's post-arrest statement beyond the flat conclusion that Rodriguez was questioned "without understanding of [his] rights." (Rodriguez Aff. ¶ 12).[6] It does not state that he was not

---

[4]       There is some confusion as to this sequence in the Declaration and Memorandum of Law of Mitchell Dinnerstein, dated April 21, 2008 ("Dinnerstein Aff." or "Dinnerstein Affidavit"), which also accompanied the Suppression Motion. In particular, the Dinnerstein Affidavit – apparently referring to the Complaint – indicates that the Officer both "observed a green minivan parked on the side of a street," and states that the Officer "pulled the vehicle over." (Dinnerstein Aff. ¶ 10). The Complaint and the Rodriguez Affidavit, however, agree that the defendant's car was moving when the defendant initially encountered the police. (Compl. ¶ 3(b),(c); Rodriguez Aff. ¶ 7).

[5]       The Government does not concede that the Victim was told that the police had "caught the guy" before making the identification. (Dinnerstein Aff. ¶ 13). However, the Court should not order an evidentiary hearing on this basis in light of the fact that: (1) Mr. Dinnerstein is not a "person with personal knowledge of the facts," *Ahmad*, 992 F. Supp. at 685, and (2) such a detail is immaterial in light of the other facts at issue.

[6]       As noted in Section E, *infra*, the Suppression Motion does not even argue that Rodriguez's post-arrest statement should be suppressed on this basis. Instead, the defendant only

read his *Miranda* rights. It does not state that he told the police that he did not understand his rights. It does not state that he invoked his rights. It does not say that he did not waive his rights. Without more to flesh out why Rodriguez allegedly did not understand his rights, this assertion is insufficient to create the need for an evidentiary hearing. *See Dewar*, 489 F. Supp. 2d at 359 ("[W]hen the allegations contained in such an affidavit are general and conclusory, an evidentiary hearing is unnecessary.").

## B.    Rodriguez's Arrest Was Supported by Probable Cause

1.    Applicable law

A warrantless arrest such as the one in this case is fully justified if there is "probable cause when the defendant is put under arrest to believe that an offense has been or is being committed." *United States* v. *Cruz*, 834 F.2d 47, 50 (2d Cir. 1987). Probable cause exists "if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States* v. *Patrick*, 899 F.2d 169, 171 (2d Cir. 1990) (citing, *inter alia*, *Brinegar* v. *United States*, 338 U.S. 160, 175-76 (1949), and *Illinois* v. *Gates*, 462 U.S. 213, 230-32 (1983)).

Probable cause is a "commonsense, nontechnical" concept that is determined by "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas* v. *United States*, 517 U.S. 690, 695 (1996) (quotation omitted). As the Supreme Court explained in *Gates*:

> The process [of determining probable cause] does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same – and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

462 U.S. at 231-32 (quotation omitted). As a result, "it is clear that only the probability, and not a *prima facie* showing, of criminal activity is the standard of probable cause." *Id.* at 235 (quotation omitted); *see also Maryland* v. *Pringle*, 540 U.S. 366, 371 (2003) ("The probable cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities . . . . We have stated . . . that [t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt.") (internal quotation marks and citations omitted); *Hill* v. *California*, 401 U.S. 797, 804 (1971) ("[S]ufficient probability, not certainty, is

---

suggests that the statement should be excluded as "fruit of the poisonous tree." *See* Dinnerstein Aff. ¶ 13; *Wong Sun*, 371 U.S. at 87-88.

the touchstone of reasonableness under the Fourth Amendment."); *Cruz*, 834 F.2d at 50 ("[I]t is not necessary to make a prima facie showing of criminal activity or to demonstrate that it is more probable than not that a crime has been or is being committed . . . . ") (quotation omitted).

The presence or absence of probable cause must be determined from the totality of the circumstances. *See Gates*, 462 U.S. at 238. That determination is inherently fact-specific, and does not lend itself to the formulation or application of specific rules or tests. Thus, the Second Circuit has explained that "[p]robable cause is a flexible term. There is no rigid demand that specific tests be satisfied." *Tenenbaum* v. *Williams*, 193 F.3d 581, 603 (2d Cir. 1999) (quotations omitted). Moreover, the information known to the officers at the time need not appear sufficient to support a conviction, or even be admissible in court. *See Adams* v. *Williams*, 407 U.S. 143, 149 (1972) ("Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. Rather, the court will evaluate generally the circumstances at the time of the arrest to decide if the officer had probable cause for his action.").

Moreover, "[p]robable cause issues are to be decided on an objective basis by courts without regard to the subjective beliefs of law enforcement officers, whatever those beliefs may have been." *Craig* v. *Singletary*, 127 F.3d 1030, 1042 (11th Cir. 1997) (en banc); *see also United States* v. *Scopo*, 19 F.3d 777, 783-85 (2d Cir. 1994) (analysis of Fourth Amendment issues involves "'an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time' and not on the officer's actual state of mind at the time the challenged action was taken") (citations omitted); *United States* v. *Ochs*, 595 F.2d 1247, 1256 (2d Cir. 1979) ("[T]he test is what could lawfully be done, not what the policemen thought the source of their power to be."). Thus, as the Second Circuit explained in *Scopo*, so long as the arresting officer had probable cause to believe an offense was being committed, and "was authorized by state or municipal law to effect a custodial arrest for the particular offense, the resulting arrest will not violate the fourth amendment." 19 F.3d at 784.

2. Analysis

Even assuming that Rodriguez's version of events were true – which it is not – the police had ample probable cause to arrest Rodriguez on April 28, 2004. The Officer had heard the radio dispatcher relate that three robbers had escaped a nearby crime scene in a green Toyota minivan, and had been provided with a partial license plate number. (Compl. ¶ 3(a)). He then observed a green Toyota minivan matching the description given by the Victim and relayed by the dispatcher. (*Id.* ¶ 3(b)). After the Officer pulled the minivan over, he observed a firearm in plain view inside the vehicle. (*Id.* ¶ 3(c)). Based on the totality of these circumstances, the Officer had "sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *Patrick*, 899 F.2d at 171 (citation omitted).[7] Indeed, the Officer's observation of a

___
[7]    To the extent that the defendant challenges the Officer's ability to pull over his vehicle at all – before the Officer observed the firearm in plain view – such an argument is

vehicle matching the description – including the partial license plate number – of a getaway car from a nearby robbery a matter of minutes before provided probable cause on its own to arrest Rodriguez.

### C.    The Police Did Not Need a Warrant to Search Rodriguez's Vehicle

1.    Applicable law

"In general, law enforcement officials, pursuant to the fourth amendment, must obtain a search warrant in order to seize an individual's property." *United States* v. *Scopo*, 19 F.3d 777, 782 (2d Cir. 1994) (citing *United States* v. *Jenkins*, 876 F.2d 1085, 1088 (2d Cir. 1989) (per curiam)). However, police officers do not need a warrant to search an automobile when they have probable cause to believe that the vehicle contains contraband or evidence of criminal activity under the so-called "automobile exception." *United States* v. *Ross*, 456 U.S. 798, 804-09 (1982); *United States* v. *Vassiliou*, 820 F.2d 28, 30 (2d Cir. 1997); *see also Pennsylvania* v. *Labron*, 518 U.S. 938, 940 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more."); *California* v. *Carney*, 471 U.S. 386, 390-393 (1985) (automobile exception is based on (1) the inherent mobility of vehicles that often makes obtaining a warrant impractical, and (2) police regulation of cars that results in a lower expectation of privacy compared to a home); *United States* v. *Gagnon*, 373 F.3d 230, 235 (2d Cir. 2004) (same).

2.    Analysis

The same probable cause that supported the Officer's decision to place Rodriguez under arrest justified his search of the defendant's vehicle. The Officer had heard about a green Toyota minivan that had been involved in a nearby robbery. (Compl. ¶ 3(a)). After pulling over a vehicle matching that description, the Officer saw a gun lying in plain view in Rodriguez's vehicle. (*Id.* ¶ 3(c)). This provided a surfeit of cause to search the defendant's minivan even in the absence of a warrant. *See Ross*, 456 U.S. at 804-09; *see also Scopo*, 19 F.3d at 781-82 (warrantless search of vehicle permissible because officers had probable cause to stop car and one officer observed firearm in plain view).

---

misplaced. "[A]n ordinary traffic stop constitutes a limited seizure within the meaning of the Fourth and Fourteenth Amendments." *United States* v. *Hassan El*, 5 F.3d 726, 729 (4th Cir. 1993) (citing *Delaware* v. *Prouse*, 440 U.S. 648, 653 (1979)). Accordingly, only reasonable suspicion is required for traffic stops. *See United States* v. *Scopo*, 19 F.3d 777, 781 (2d Cir. 1994) ("[S]uch stops must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct.") (citation omitted); *see also United States* v. *Brignoni-Ponce*, 422 U.S. 873, 884 (1975) (holding that reasonable suspicion arises when law enforcement officers are "aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion"). The Officer's observation of a vehicle matching the description of the getaway car from a nearby and recent robbery provided reasonable suspicion for the stop.

**D.    The "Show Up" Identification Was Not Impermissibly Suggestive**

      1.    Applicable law

      Pre-indictment identifications must comport with due process. *Kirby* v. *Illinois*, 406 U.S. 682, 690-91 (1972). Accordingly, "[i]dentification testimony will be excluded when it is based on police procedures that are so suggestive as to create 'a very substantial likelihood of irreparable misidentification.'" *United States* v. *Mohammed*, 27 F.3d 815, 821 (2d Cir. 1994) (quoting *Simmons* v. *United States*, 390 U.S. 377, 384 (1968)). However, "even a suggestive out-of-court identification will be admissible if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability." *United States* v. *Simmons*, 923 F.2d 934, 950 (2d Cir. 1991); *see also Raheem* v. *Kelly*, 257 F.3d 122, 135 (2d Cir. 2001) (a suggestive procedure "'does not in itself intrude upon a constitutionally protected interest' if it did not contribute significantly to the identification of the defendant") (quoting *Manson* v. *Brathwaite*, 432 U.S. 98, 113 n.13 (1977)).

      In considering the reliability of a potentially suggestive identification, courts must weigh:

> [T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil* v. *Biggers*, 409 U.S. 188, 199 (1972); *see also United States* v. *Concepcion*, 983 F.2d 369, 378 (2d Cir. 1992). "A good or poor rating with respect to any one of the[] factors will generally not be dispositive." *Concepcion*, 983 F.2d at 377; *see also United States* v. *Lebron-Cepeda*, 324 F.3d 52, 59 (1st Cir. 2003) (identification not impermissibly suggestive although defendant was handcuffed and sitting in police cruiser); *United States* v. *Hefferon*, 314 F.3d 211, 218-19 (5th Cir. 2002) (identification not impermissibly suggestive although defendant was handcuffed and flanked by armed officers).

      2.    Analysis

      The *Biggers* factors weigh strongly against suppressing the positive identification of the defendant made by the Victim on April 28, 2004. First, the Victim had an excellent opportunity to view the participants in the robbery. (Compl ¶ 2(d), (e)). Second, the Victim was obviously paying a great deal attention to the individuals robbing him, rather than being a casual third-party observer to a scene. *See id.* Third, the Victim supplied the police with a description of the robbers even as he pursued them as they made their escape in the green Toyota minivan. (Compl. ¶ 2(f)). Fourth, although the Complaint does not go into detail on the level of certainty the Victim showed at the identification, the Victim affirmatively identified Rodriguez as a participant in the robbery. (*Id.* ¶ 3(e)). And fifth, only approximately 30 minutes elapsed between the robbery and the Victim's identification of Rodriguez. *See* Footnote 3, *supra*; *cf.*

Hon. Victor Marrero
May 16, 2008
Page 9 of 10

*United States* v. *Salameh*, 152 F.3d 88, 125-27 (2d Cir. 1998) (identification even one week after bombing reliable).

In light of the weight of the *Biggers* factors, the Victim's identification of Rodriguez should not be suppressed, even though it – like all "show up" identifications – was potentially suggestive. *See Lebron-Cepeda*, 324 F.3d at 59 ("show up" identification admissible although defendant was handcuffed and sitting in police cruiser); *Hefferon*, 314 F.3d at 218-19 (5th Cir. 2002) ("show up" identification admissible although defendant was handcuffed and flanked by armed officers); *see also Kennaugh* v. *Miller*, 289 F.3d 36, 43 (2d Cir. 2002) ("[R]eliability of eyewitness identification testimony is usually an issue for jury determination" unless "the degree of unreliability leads to 'a very substantial likelihood of irreparable misidentification.'") (quoting *Manson*, 432 U.S. at 116).

## E.    Rodriguez's Statement Should Not be Suppressed

1.    Applicable law

Before custodial questioning may begin, law enforcement officials must inform a defendant of his or her right against self-incrimination and right to counsel. *Miranda* v. *Arizona*, 384 U.S. 436, 478-79 (1966).    A custodial statement made in response to law enforcement questioning without a recitation of these rights may be suppressed. *Id.* at 479.

A defendant may invoke the right to remain silent or consult with his attorney at any time prior to or during custodial interrogation. *Id.* at 473-74. However, if the invocation is ambiguous, further questioning is permissible. *See, e.g.*, *United States* v. *Ramirez*, 79 F.3d 298, 305 (2d Cir. 1996) (questioning permissible when defendant remained silent on some questions but responded to others); *see also Burket* v. *Angelone*, 208 F.3d 172, 199 (4th Cir. 2000) (questioning permissible as defendant's statement that "I just don't think that I should say anything" was equivocal assertion of right to remain silent). Unlike the right to counsel under the Sixth Amendment, which attaches automatically at the commencement of formal legal proceedings against an individual, *see Brewer* v. *Williams*, 430 U.S. 387, 404 (1977), the Fifth Amendment right to counsel must be explicitly and clearly invoked by a defendant, *see Davis* v. *United States*, 512 U.S. 452, 458-59 (1994).

In addition, a statement obtained pursuant to the unlawful arrest of an individual should be suppressed as "fruit of the poisonous tree" pursuant to *Wong Sun* v. *United States*, 371 U.S. 471, 87-88 (1963).

2.    Analysis

Perhaps recognizing the inadequacy of his conclusory assertion that he was questioned "without understanding of [his] rights," (Rodriguez Aff. ¶ 12), Rodriguez instead only argues that his statement should be suppressed as fruit of his allegedly unlawful arrest, *see*

Hon. Victor Marrero
May 16, 2008
Page 10 of 10

Dinnerstein Aff. ¶ 13; *Wong Sun*, 371 U.S. at 87-88.  As Rodriguez's arrest was supported by probable cause, as described in Section B, *supra*, this argument fails and the statement should not be suppressed.[8]

CONCLUSION

For the foregoing reasons, the Government submits that the physical evidence, the "show up" identification, and Rodriguez's post-arrest statement are admissible, and that the Suppression Motion should be denied without a hearing.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By: _____
Telemachus P. Kasulis
Assistant United States Attorney
(212) 637-2411

cc:    Mitchell Dinnerstein, Esq. (by facsimile)
Thomas Hamilton Nooter, Esq. (by facsimile)

The Clerk of Court is directed to enter into the docket of this case the Government's response above to the motion of defendant Arsenio Rodriguez to suppress.

SO ORDERED:

7-18-08
DATE        VICTOR MARRERO, U.S.D.J.

---

[8]    The Government also notes that the statement that Rodriguez seeks to suppress is consistent with the position he now presses before this Court – namely, that he was merely taking an innocent drive on April 28, 2004 when he was unluckily carjacked by the actual robbers in this case.